UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 20-cr-10321-WGY |
| JOHN BOAMPONG, <br>     Defendant. | ) ) ) ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Sitting here now in late Fall 2021, it might be difficult to remember the turmoil in Boston the night of Defendant Boampong's crime. But Chief Magistrate Judge Kelley summarized it well:

> . . . A peaceful demonstration protesting the death of George Floyd had evolved into widespread looting, among other criminal acts including violence directed toward the police, and police asked Mr. Boampong to leave the area. During the ensuing confrontation with police, Mr. Boampong claims that the police broke a window in his car; the government alleges that as he suddenly backed up, an officer struck his car with a baton because he feared Mr. Boampong was going to hit officers and another car. Shortly thereafter, Mr. Boampong, who apparently had left the area, came back, got out of his car, and fired eleven rounds from a gun, apparently over the heads of several officers. Two of the bullets entered occupied apartments in a residential building on the 7th and 10th floors. . . .
>
> . . . Mr. Boampong, with others, was driving around Boston at 3:00 a.m. in an area which, from the exhibits entered into evidence at the hearing, looked like it was in a state of chaos. There was a heavy police presence, as the police tried to maintain order and stop widespread looting and other violent acts. After the incident, merchandise from several looted stores was found in Mr. Boampong's car, along with the illegally-possessed handgun. Assuming it is true that the police broke a window in his car, that in no way justifies his emptying a handgun over the heads of the police and into an occupied residential building. The fact that no one was injured or killed in the course of this senseless incident is miraculous.

Dkt. # 13, Order of Detention at 3 (Kelley, C.M.J.).

This underpins the United States' recommendation to sentence Defendant Boampong to 63 months in prison; 3 years of supervised release thereafter; a fine at the low end of the Guidelines sentencing range, unless the Court finds that Defendant is not likely to become able to pay a fine following his discharge from prison; restitution; forfeiture; and a $300 mandatory special assessment. This sentence is appropriate not only because of Defendant Boampong's danger to the community, but also to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to deter others from similar conduct in the future.

## The Sentencing Guidelines

On February 4, 2021, Defendant Boampong pled guilty to all three counts of an Information: interfering with a law enforcement officer during the course of a civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); receipt of a firearm by a person under indictment for a felony offense, in violation of 18 U.S.C. § 922(n) (Count Two); and assaulting, resisting or impeding certain officers or employees, in violation of 18 U.S.C. § 111 (Count Three).

The Supreme Court has directed federal trial courts to initially calculate the appropriate guideline sentencing range under the advisory federal sentencing guidelines. *Gall v. United States*, 552 U.S. 38, 41 (2007). The sentencing guidelines, the Supreme Court has acknowledged, are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id*. at 46 (footnote omitted).

The parties and Probation all agree that Defendant Boampong's total offense level is 24, that his criminal history category is I, and that his guidelines sentencing range is therefore 51-63 months. *See* Dkt. # 19, Plea Agreement ¶ 4; PSR ¶ 41. The parties' plea agreement, filed pursuant to Fed. R. Crim. P. 11(c)(1)(C), specifies an incarceration range of 42-63 months.

Consistent with this agreement, the government requests a 63-month sentence at the top of the guidelines range because it would properly convey the general and specific message of deterrence and respect for the law that so dearly needs to be delivered.

1. ***The Defendant's Guideline Sentencing Range is a Fair Qualitative Measure of Moral Culpability and Resulting Harm***

Despite this agreement on the offense level, the Court should still consider whether the offense level is fair in this particular case. The Sentencing Guidelines serve the Court best when they present a fair qualitative measure of a defendant's moral culpability and resulting harm. They do so here.

The operative guideline is USSG § 2A2.2, which applies to aggravated assaults. An aggravated assault is "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (*i.e.*, not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." USSG § 2A2.2 comment. (n.1). Here, the other felony is interfering with a law enforcement officer during the commission of a civil disorder in violation of 18 U.S.C. § 231(a)(3), as charged in Count One. An aggravated assault is a serious crime, and thus the base offense level is a commensurately serious 14. USSG § 2A2.2(a).

Some assaults are more serious than others. Among the most serious are those in which the defendant discharges a firearm, as Defendant Boampong did here and caused officers in the area to fear that the shots were directed at them. PSR ¶ 32. Consequently, Defendant Boampong deserves the five-level enhancement for discharging a firearm, under USSG § 2A2.2(b)(2).

A defendant is especially blameworthy when he commits an aggravated assault against a law enforcement officer, as Defendant Boampong did here. Consequently, Defendant Bo-

3

ampong deserves the two-level enhancement for violating 18 U.S.C. § 111(b) (Assaulting, Resisting, or Impeding Certain Officers or Employees), under USSG § 2A2.2(b)(7).

In fact, the guidelines take very seriously any offense against a government employee that was motivated by their government service. This is as it should be. Government workers may not be perfect, but they do generally serve the public trust. Consequently, the guidelines punish such offenses with an additional six-level enhancement, under USSG § 3A1.2(b). This is again fair here, because Defendant Boampong purposefully assaulted law enforcement officers while they sought to restore order out of chaos.

These calculations arrive at an offense level of 27, which correctly measures Defendant Boampong's moral culpability and the resulting harm. However, he does deserve the three-level reduction for acceptance of responsibility, under USSG § 3E1.1, because he did spare the government and the public the expense and resources of a trial.

The resulting total offense level of 24 is therefore a fair qualitative measure of the defendant's moral culpability and resulting harm.

2.  *This Defendant Should Be Sentenced Higher Than the Average or Median Sentence Imposed for This Guideline and Criminal History Category*

The First Circuit has noted that "the guidelines are the starting point for the fashioning of an individualized sentence, so a major deviation from them must 'be supported by a more significant justification than a minor one.'" *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008) (quoting *Gall*, 552 U.S. at 50).

Thus, the starting point here is the guideline sentencing range specified above: offense level 24, criminal history category I, and 51-65 months of imprisonment.

The United States Sentencing Commission's Judiciary Sentencing Information webpage reports the following information about defendants sentenced under this guideline and criminal

history category in the past: "During the last five fiscal years (FY2016-2020), there were 19 offenders whose primary guideline was §2A2.2, with a Final Offense Level of 24 and a Criminal History Category of I, after excluding offenders who received a §5K1.1 substantial assistance departure. For the 18 offenders (95%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 52 month(s) and the median length of imprisonment imposed was 51 month(s)."  *See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited Oct. 18, 2021).

There are several reasons under the why the Court should sentence Defendant Boampong not to the median sentence of 51 months or the average sentence of 52 months (at the bottom of the guidelines range), but instead to 63 months (the top of the guidelines range).  The guideline, USSG § 2A2.2, does not consider the number of victims, the number of times the defendant discharged his firearm, whether the defendant was entitled to possess a firearm, or whether the defendant caused property damage or recklessly put others in danger.  Here, Defendant Boampong was prohibited from possessing a firearm but possessed it nonetheless, PSR ¶¶ 22-23, fired his firearm eleven times, PSR ¶ 16, in an area patrolled by over ten law enforcement officers, *see* Gov't Ex.8 (still photographs from scene, admitted at detention hearing, Dkt. # 10), and in doing so caused bullets to enter at least two apartments, PSR ¶ 16.  All these facts make this case more serious than the run-of-the-mill case sentenced under USSG § 2A2.2 and necessitate sentencing Defendant Boampong to the top of the guideline range.

Another reason for sentencing Defendant Boampong to the top of the guidelines is the fact he has already benefited enormously from this plea agreement, which allowed him to avoid the ten-year mandatory minimum that he would have faced had he been charged under 18 U.S.C.

§ 924(c). Charging Section 924(c) would have been appropriate.[1] It would have required a mandatory minimum term of at least 10 years' imprisonment *on and after* his sentence for the underlying crime.[2] His plea agreement foreclosed that heavy charge because of the issues identified in PSR ¶¶ 72-78a and in the defendant's sealed submission. Although it was just for the U.S. Attorney to forgo charging the defendant under § 924(c), it is also just to acknowledge that his far, far lower sentence makes a top-of-the-guidelines sentence appropriate.

### All Theories of Sentencing Make a 63-Month Sentence Appropriate

A 63-month sentence of imprisonment is also necessary to satisfy the sentencing factors that the Court must consider in 18 U.S.C. § 3553(a). The nature and circumstances of the offense, § 3553(a)(1), speak for themselves: among the "widespread looting" and "other criminal acts including violence directed toward the police," Defendant Boampong brought the threat of death—because that is what nearby gunfire signals anytime, let alone during a civil disorder—to multiple police officers with eleven shots overhead, two of which entered a building, making the lack of injury or death only a miracle.

Why did the defendant do this? To protect himself, a friend, or a relative who was in danger? No: he fired because he was mad at the policeman who (he says) broke his car windshield . . . a windshield that the policeman had tapped so that Defendant Boampong would pay attention and not run over others or hit other cars.

Did the defendant act on the spur of the moment act, without time for thought? No again: after the windshield incident, the defendant drove away, circled the Boston Common, drove to a

---

[1] Section 924(c) applies "to any person who, during and in relation to any crime of violence . . . (including a crime of violence . . . that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A).

[2] *See* 18 U.S.C. § 924(c)(1)(A)(iii) (holding that any person who violates this section "shall, in addition to the punishment provided for such [underlying] crime of violence . . . —(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years").

side street, parked, opened his car, got out, and walked away from it. Only then did he open fire. He had plenty of time to think and rethink.

Miraculously, Defendant Boampong hit none of the officers and the rounds were fired over their heads. But this only underscores what makes his crime so inexcusable: that he had time to think and plan, but did not, and that he was willing to risk reckless injury to officers, property and others in the building above. Over all of this hangs, of course, the fact that while the police sought to protect the public and restore order amidst chaos, the defendant wanted only revenge for some minor property damage.

The remaining sentencing factors—seriousness of the offense, promoting respect for the law, providing just punishment, and general deterrence—all point the same way. *See* 18 U.S.C. § 3553(a)(2)(A), (B). For the reasons noted above, this was a very serious offense which itself disrespected the law, and for that reason it requires just punishment and general deterrence.

None of this is to suggest any disapproval with the original demonstration's peaceful intentions or with the idea that Defendant Boampong should have been able to petition the government if he thought that the police had broken his windshield illegally. The First Amendment guarantees citizens the right to petition their government with grievances. But it does not guarantee them the right to petition the government with a loaded gun.

What of Defendant Boampong's claims that the Court should sentence him to the below-guidelines low end of the C-plea range because of his mental health and past experiences with the police? While these concerns are clearly relevant to "characteristics of the defendant," § 3553(a)(1)—and again, they played a part in the United States' decision not to charge § 924(c)—these concerns played little part in this crime. As noted above, this was no quick

crime of passion: Defendant Boampong had plenty of time to cool off between after he first encountered the police, when he drove away, drove back, parked, left his car, walked, and aimed.

Moreover, focusing on what happened at the scene completely ignores what happened *well before Defendant Boampong arrived on-scene.* Consider what Defendant Boampong did beforehand:

- He had a gun, despite a prior court's prohibition on possessing firearms.
- He had multiple rounds of ammunition for this gun.
- He brought the gun and ammunition along to what he says he thought would be a peaceful protest.
- His car contained multiple items of merchandise stolen from stores nearby.
- He brought the gun and ammunition along to pick up someone he knew was arguing with the police and in danger of being arrested by them, *despite knowing his own history with the police*.

In other words, Defendant Boampong made a series of deliberate decisions—some merely bad, some actually criminal—well before he arrived in downtown Boston for the protest, and well before he first encountered the police, and he continued to make deliberate decisions as he drove away and drove back to get his revenge. Defendant Boampong's history and characteristics do not warrant the below-guidelines sentence that he seeks.

## Conclusion

For the reasons given above, the United States recommends that the Court sentence Defendant Boampong to 63 months in prison; 3 years of supervised release thereafter; a fine at the low end of the Guidelines sentencing range, unless the Court finds that Defendant is not likely to

become able to pay a fine following his discharge from prison; restitution; forfeiture; and a $300 mandatory special assessment.

        Respectfully submitted,

        NATHANIEL R. MENDELL
        Acting United States Attorney

By:   */s/ Scott L. Garland*
      SCOTT L. GARLAND
      JOHN DAWLEY
      Assistant U.S. Attorneys

Dated: October 22, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on October 22, 2021.

        /s/ *Scott L. Garland*
        Scott L. Garland
        Assistant U.S. Attorney